IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINO BALINTON,<br><br>       Petitioner,<br><br>  v.<br><br>ERIC ARNOLD,<br><br>       Respondent. | No. C 14-3991 LHK (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent was ordered to show cause why the petition should not be granted. Respondent has filed an answer. Although given an opportunity, petitioner has not filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief, and DENIES the petition.

**PROCEDURAL HISTORY**

On August 7, 2009, petitioner was charged with kidnapping to commit rape, sodomy, and oral copulation (Count 1); forcible rape (Count 2); forcible oral copulation (Count 3); oral copulation of a minor (Count 4); and assault with intent to commit sodomy (Count 5). On April 5, 2011, a jury convicted petitioner of Counts 2, 3, and 4. The jury also found corresponding kidnapping enhancements true as to Counts 2 and 3. The jury further convicted petitioner of simple assault as a lesser included offense of Count 5. The jury deadlocked on Count 1, and the

trial court ultimately declared a mistrial on Count 1.  The jury also found true a single serious felony strike conviction.  On May 20, 2011, the trial court sentenced petitioner to a term of 55 years to life.

On March 19, 2013, the California Court of Appeal affirmed.  On June 12, 2013, the California Supreme Court denied review.  Petitioner filed the underlying federal habeas petition on September 3, 2014.

## BACKGROUND

The following facts are taken from the Court of Appeal's opinion in *People v. Balinton*, No. A132571, 2013 WL 1122486 (Cal. App. March 19, 2013).

In 2001, 16 year-old C.C. was walking on Sixth Street in San Francisco.  At some point, someone grabbed C.C. from behind and pulled her back into an alleyway.  C.C. was unable to get away.  The attacker pulled C.C. into a large cardboard box where he sexually assaulted and raped her.  Some time after C.C. escaped from the attacker, she was taken to the hospital where she was examined by a sexual assault nurse.  Swabs were taken from C.C.'s mouth, vagina, and anus.  C.C. gave a description of her attacker as an African-American male, approximately 45 years old, 5 feet nine inches tall, and weighing around 220 pounds.

In 2008, a "cold hit" of DNA from sperm found and preserved on C.C.'s underpants matched a reference sample of petitioner's DNA.  At the time, petitioner was incarcerated at San Quentin State Prison.  Petitioner admitted being in the area during the time C.C was attacked, but denied having sex with anyone in the alleys south of Market Street, where the attack occurred.  Petitioner stated that at the time of the attack, petitioner had a girlfriend and they would go to a hotel to have sex.  Petitioner did not recognize C.C. when the police showed him her picture.  Petitioner denied that there was any chance his DNA could end up in evidence collected in C.C.'s sexual assault case.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the United States Supreme Court as of the time of the state court decision. *Id.* at 412. Clearly established federal law is defined as "the governing legal principle or principles set forth by the [United States] Supreme Court." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

## DISCUSSION

Petitioner's sole claim in his federal habeas petition is that the trial court's instruction regarding asportation for the kidnapping enhancements under Cal. Penal Code § 667.61(d)(2), charged in connection with Counts 2 and 3, was erroneous. The court instructed the jury on the

kidnapping enhancements as follows:

> If you find the defendant guilty of the crimes charged in Counts Two and Three, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant kidnapped [C.C.], increasing the risk of harm to her. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.
>
> To prove this allegation, the People must prove that:
>
> 1. The defendant took, held, or detained [C.C.] by the use of force or by instilling reasonable fear;
> 2. *Using that force or fear, the defendant moved [C.C.] or made her move a substantial distance*;
> 3. The movement of [C.C.] substantially increased the risk of harm to her beyond that necessarily present in the crimes of rape and/or forced oral copulation.
>
> "Substantial distance" means more than a slight or trivial distance. The movement must be more than merely incidental to the commission of rape and/or forced oral copulation. In deciding whether the distance was substantial and whether the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement.

*Balinton*, 2013 WL 1122486, at *2-*3 (emphasis added). Petitioner argues that, with regard to the emphasized portion, there should have been a comma inserted before and after the phrase "or made her move," to clearly communicate that the "substantial distance" was meant to modify both "moved" and "made her move." That is, without the commas, the instruction misstated the elements of the kidnapping enhancement. Thus, argues petitioner, the jury could have found the kidnapping enhancements true if it found that he moved C.C. without finding that he moved C.C. a substantial distance.

The California Court of Appeal considered and rejected petitioner's claim as follows:

> Appellant's contention that the instruction on the "movement" element of section 667.61, subdivision (d)(2), prejudicially misled the jury does not withstand scrutiny. To begin with, we cannot divine from a cold record whether the trial court read the instruction in a way that corrected the grammatical imprecision of the written instruction, that is, did the court pause between the term "moved [C.C.]" and the term "or made her move"? Such a pause would have signaled that there was a comma between the two elements as appellant asserts there must be. We presume the court properly performs its judicial duties, including knowing and applying the correct statutory law, and properly presenting the instructions to the jury. (*See* Evid. Code, § 664.)
>
> Moreover, the instructions as a whole conveyed that the substantial distance applied whether the assailant moved the victim or made her move. The instruction explained that the People must prove that *the movement* of C.C. substantially increased the risk of harm and "the *movement* must be more than

merely incidental to the commission" of the offense. Further, the jury was advised to "consider all the circumstances relating to *the movement*" in deciding whether the distance was substantial. (Italics added.) There is no logic to the argument that the jury would conclude that the substantial distance element applied only when making the victim move as opposed to actually moving the victim. We presume that jurors are intelligent persons, capable of correlating and understanding jury instructions. (*People v. Brock* (2006) 143 Cal. App. 4th 1266, 1277.) A reasonable juror would not interpret the instruction as appellant suggests, namely that because there is no comma between the two forms of movement, the substantial distance component does not apply if the perpetrator actually moved the victim. Such an interpretation is nonsensical.

Additionally, the arguments of counsel assisted in eliminating any potential ambiguity. The prosecutor's closing argument made it clear that the "substantial distance" factor applied to moving the victim, not just making the victim move: "The defendant . . . took the person by force – I think it is real clear that that happened in this case. [¶] *Moved the person a substantial distance*, beyond merely incidental to the commission of these crimes." (Italics added.)

Defense counsel in turn underscored that the substantial distance factor pertained to appellant's act of moving C.C. to the alley: "[W]e have to think that the reason the assailant dragged [C.C.] into the alley was for one purpose and that's sexual assault. So I would suggest the element to focus on is element No. 3 . . . : 'Using that force or fear the defendant moved the other person or made the other person move,' . . . – this is the reason I bring this jury instruction up. Made the other person move a substantial distance. [¶] Now distance – substantial distance is actually defined. . . . [¶] And I will tell you that I agree. Forty to fifty feet is a substantial distance for anyone to go anywhere. But remember when [C.C.] moved away from her estimation of how far it was in terms of number of feet and visualized the distance while she was on the witness stand? You remember that distance . . . shrunk to the distance between where she was seated in the witness chair and the end of [the prosecutor's] table? [¶] Is that in fact a substantial distance? Are you convinced of that beyond a reasonable doubt?"

The prosecutor in rebuttal continued to present the evidence as showing that appellant moved the victim a substantial distance: "[Defense counsel] indicated . . . there wasn't a substantial movement in the case. . . . We weren't there. We weren't [C.C.]. It is a pretty substantial distance for her. Took her out of public view. Took her out of any hope for being helped. Put Mr. Balinton in a position where no one would interfere with what he was doing. [¶] Not too dissimilar to walking down the sidewalk, the door open, pull you in, close the door. You could be in another world, folks. No help is coming. You are completely out of view. You are at the mercy of who dragged you there. Substantial distance for a sixteen-year old girl, absolutely."

Appellant argues that the instruction on the substantive kidnapping charge and the section 667.61, subdivision (d)(2), instruction both suffered the same grammatical error, but in the substantive kidnapping charge, element 4 clarified that any movement of the victim had to be for a distance more than incidental to the commission of the sex crime. From this appellant concludes: "Since a properly instructed jury dealing with the same issue was unable to agree whether the movement was for a substantial distance, there is at least a reasonable chance the true finding on [the section] 667.61 [, subdivision] (d)(2)

1     charge was based on the legally invalid theory that appellant moved [C.C.]."

    Appellant's contention is not accurate. Some background is in order. The jury submitted a note asking the court to identify and clarify the phrase, "'merely incidental to the commission of rape or oral copulation or sodomy'" with respect to the substantive kidnapping count. The court responded: "'This is a question of fact for you to decide. You must consider the totality of circumstances in making this decision.'" Later, the jury asked: "'What happens if we cannot reach a unanimous decision on a greater charge, [section] 209 [kidnapping for rape or other sex offenses], specifically on point No. 4?'" The court noted that item 4 states: "'The other person was moved or made to move a distance beyond . . . that merely incidental to the commission of rape or oral copulation or sodomy.'" The court queried whether the jury was hopelessly deadlocked on that count; it was not, and thus deliberations continued, but ultimately the jury did deadlock and a mistrial was declared as to the substantive kidnapping charge.

    We relate this sequence to illustrate that the jury was not confused, and apparently did not deadlock, on the issue of the scope of the substantial distance component of section 209, subdivision (b) – that is, did the component pertain to both forms of movement or just one? That point was covered in item three of the instruction, namely: "Using that force of fear, the defendant moved the other person or made the other person move a substantial distance." No question was asked about item three.

    Moreover, that the jury hung on the substantive kidnapping charge does not suggest that it was confused. "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*People v. Lewis* (2001) 25 Cal. 4th 610, 656.) Inconsistent verdicts most likely result from compromise in the jury room, or the extension of mercy or leniency to the defendant. (*People v. Pahl* (1991) 226 Cal. App. 3d 1651, 1656.) Section 954 could not be clearer: "An acquittal of one or more counts shall not be deemed an acquittal of any other count."

    In sum, for all these reasons there is no reasonable likelihood the jury would have misconstrued or misapplied the instruction in the impermissible manner appellant suggests.

    Appellant also urges that the omission of a comma did more than render the instruction ambiguous – it misstated an element of the charge, and thus the resulting instruction violated his due process rights. As we explained above, no reasonable juror would understand the instruction as removing the substantial movement element in circumstances where appellant actually moved the victim as opposed to making her move. There was no due process violation here.

    To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See id.* In other words, the court must evaluate jury instructions in the context of

the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

In reviewing an ambiguous instruction, as petitioner argues here, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & n.4. In order to show a due process violation, the defendant must show both ambiguity and a "reasonable likelihood" that the jury applied the instruction in a way that violates the Constitution, such as relieving the state of its burden of proving every element beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-191 (2009) (internal quotations and citations omitted).

The state court's rejection of petitioner's interpretation of the instruction was reasonable. Reading the instruction as a whole, the state court's conclusion was reasonable that the challenged instruction properly conveyed the message that the "substantial distance" element applied with respect to whether petitioner moved C.C. or made C.C. move. Even assuming that the instruction was ambiguous, it is reasonable to conclude that the arguments of counsel clarified any potential ambiguity by emphasizing that the "substantial distance" element applied to both the movement of C.C. as well as any act to make her move. Viewing the record and the totality of the circumstances surrounding the challenged instruction, the court concludes that there was not a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution.

Alternatively, assuming that the instruction was ambiguous and erroneous, petitioner has not demonstrated that such error resulted in a substantial and injurious effect on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The evidence clearly supported a finding that petitioner moved C.C. a substantial distance. To determine whether the "substantial distance" element is satisfied, "a trier of fact may consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both

the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." *People v. Arias*, 193 Cal. App. 4th 1428, 1435-36 (2011). In California, "relatively short distances have been found not to be incidental where the movement results in a substantial change in the context of the environment." *People v. Diaz*, 78 Cal. App. 4th 243, 247 (2000) (citing cases). Moreover, "a rape involves solely an attack on the person and does not necessarily require movement to complete the crime." *Id.* at 248 (quoting *People v. Salazar*, Cal. App. 4th 341, 347 (1995)).

Here, the record demonstrates that C.C. testified she was dragged from the street back into an alleyway and into a large cardboard box with openings cut out and pieces of cloth hanging over the openings. C.C. initially testified that petitioner dragged her 40-50 feet, but later testified that the distance was similar to that between the witness stand and the prosecutor's table. Despite the actual distance that C.C. was moved, the evidence shows that the movement increased C.C.'s risk of harm, decreased the likelihood that she would be detected, and increased the danger inherent in her foreseeable attempts to escape. *See Arias*, 193 Cal. App. 4th at 1435-36. Thus, even assuming that the instruction was ambiguous as to whether the jury had to find that petitioner moved C.C. a substantial distance, the evidence was more than sufficient to satisfy that element.

Accordingly, the state court's decision was not contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law.

## CONCLUSION

The petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

1  The clerk is instructed to enter judgment in favor of respondent, terminate all pending
2  motions, and close the file.
3  IT IS SO ORDERED.

4  DATED: 11/17/2015

_____
LUCY H. KOH
United States District Judge